**Louis GARIANO, Plaintiff,**

v.

**CSC INSURANCE COMPANY, Defendant and Third-Party Plaintiff,**

v.

**PENNSYLVANIA BLUE SHIELD and Pennsylvania Blue Shield Medicare, Third-Party Defendants.**

**Civ. A. No. 92–4981(SSB).**

United States District Court, D. New Jersey.

March 7, 1994.

Robert J. Hensler, Matteo and Cuneo, Moorestown, NJ, for plaintiff.

John J. Spence, Haddonfield, NJ, for defendant and third-party plaintiff.

Karen A. Peterson, Brown & Connery, Westmont, NJ, for third-party defendant Pennsylvania Blue Shield.

Peter G. O'Malley, Sp. Asst. U.S. Atty., Newark, NJ, for third-party defendant Pennsylvania Blue Shield Medicare.

## OPINION

BROTMAN, Senior District Judge.

Before the court are the motions of third-party defendants Pennsylvania Blue Shield ("Blue Shield") and Pennsylvania Blue Shield Medicare ("PBS Medicare") to dismiss—or for summary judgment against—the claim brought against them by defendant/third-party plaintiff CSC Insurance Company ("CSC"). As detailed below, the court concludes that CSC lacks standing to maintain an action against Blue Shield and PBS Medicare. Accordingly, the motions will be granted.

## I. Facts and Procedural Background

Plaintiff Louis Gariano attempts in this case to obtain insurance payment for medical expenses related to injuries he sustained in a 1989 automobile accident. Mr. Gariano initiated the instant action in New Jersey Superior Court against CSC, with whom plaintiff held an automobile insurance policy, upon CSC's refusal to pay for the claimed expenses. CSC, alleging that plaintiff's claim is not covered under its policy but is covered by plaintiff's policies with Blue Shield and PBS Medicare, subsequently joined Blue Shield and PBS Medicare as third-party defendants. In its third-party complaint, CSC seeks a judgment ordering the third-party defendants to pay the claims of the the plaintiff and to indemnify and/or contribute to any judgment entered against CSC.

On November 25, 1992, PBS Medicare and Blue Shield removed the instant action to

this court, pursuant to 28 U.S.C. § 1441(b).[1] On July 14, 1993 and July 19, 1993, PBS Medicare and Blue Shield respectively filed the instant motions.[2]

## II. Statutory Framework Governing PBS Medicare

In Title XVIII of the Social Security Act (hereinafter the "Act"), 42 U.S.C. §§ 1395–1395ccc, Congress established the program of Health Insurance for the Aged and Disabled, popularly known as Medicare, which is paid for, in part, by the monthly contributions of Medicare beneficiaries. Beneficiaries of the program are individuals eligible for Social Security insurance benefits under Title II of the Act. *See* 42 U.S.C. § 401–433.

Medicare, Part A, provides insurance for hospital, related post-hospital, and home health services. 42 U.S.C. §§ 1395c, 1395i–4. Part B is a voluntary subscription program of supplementary medical insurance covering charges for certain other services—primarily physician services, x-rays, laboratory tests, and some medical supplies. 42 U.S.C. §§ 1395j, 1395w–4; *see also* 42 U.S.C. §§ 1395k, 1395*l*, 1395x(s).

Donna E. Shalala, the Secretary of the Department of Health and Human Services ("HHS"), is responsible for administering the Medicare program. 42 U.S.C. § 1395kk. Pursuant to the Act, the Secretary is authorized to contract with public or private entities—characterized as "intermediaries" for Part A and "carriers" for Part B—to perform designated functions.[3] 42 U.S.C. §§ 1395h, 1395u(a); 42 C.F.R. § 421.100, .200. Among other authorized duties, these entities process and review claims submitted by beneficiaries or their assignees to determine if such claims are for covered services, and if so, to pay the proper amount to the claimant.

The intermediary or carrier's claim-paying function is triggered by receipt of a claim or request for payment. Part A benefits are not paid to Medicare beneficiaries, such as Mr. Gariano, but are paid directly to the provider. 42 U.S.C. § 1395f. A provider is defined as

a hospital, rural primary care hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program or [a hospital fund].

42 U.S.C. § 1395x(u).

Under Part B, claims are generally paid to the beneficiary; however the claim or request for payment also may operate as an assignment agreement when the beneficiary assigns his right to receive payment to the provider or supplier. In the case of an assignment, the provider or supplier submits the claim and receives payment. 42 U.S.C. § 1395*l*; 42 C.F.R. § 405.802(c)–(e). Any claimant—that is, a beneficiary or a provider or supplier who has accepted assignment—who disputes either the amount of payment provided on a Medicare claim or the outright denial of a Medicare payment, is entitled to administrative review of the determination as set forth in the statute. 42 U.S.C. § 1395ff.

Under both Part A and Part B it is only once these administrative appeal procedures have been exhausted that the beneficiary, provider, or supplier of Medicare services is entitled to federal judicial review of claims. 42 U.S.C. § 1395ff(b).[4]

---

1. Medicare is a medical insurance program established by the federal government pursuant to 42 U.S.C. §§ 1395–1395ccc. Blue Shield, in determining the validity of Medicare claims, is an agent of the United States Department of Health and Human Services. 42 C.F.R. §§ 421.100, 421.200. Accordingly, the instant matter arises under federal law and thus makes removal of the case proper.

2. CSC, while not consenting to the relief requested by Blue Shield and Medicare, refrained from submitting papers in opposition to the instant motions.

3. Pennsylvania Blue Shield acts as a Medicare, Part B carrier in New Jersey pursuant to a contract entered into with the Secretary of HHS in accordance with the Medicare statute. 42 U.S.C. § 1395u; 42 C.F.R. § 421.200.

4. Exceptions to this exhaustion requirement exist, but, as discussed below, the applicability of such exceptions is not relevant to the outcome of the instant motions.

## III. Discussion

In the instant motions, Blue Shield and PBS Medicare seek dismissal or summary judgment on three alternative grounds: (1) that CSC lacks standing to initiate an action against Blue Shield and PBS Medicare; (2) that CSC fails to state a claim; and (3) that this court lacks subject matter jurisdiction over any action commenced against PBS Medicare or Blue Shield in this case because neither Mr. Gariano nor his assignees exhausted administrative remedies that are prerequisite to initiating legal action against PBS Medicare and, derivatively, against Blue Shield. Additionally, Blue Shield independently argues that, due to the structure of the PBS Medicare/Blue Shield relationship, any liability Blue Shield incurs in this case will only be derivative to that incurred by PBS Medicare; accordingly, Blue Shield contends, a dismissal of the claim against PBS Medicare necessitates a dismissal of the claim against Blue Shield.

### A. Standing

PBS Medicare and Blue Shield allege that CSC lacks standing to bring the instant third-party suit against PBS Medicare and, derivatively, against Blue Shield. A plaintiff must have standing to sue on the claim brought in order to present a justiciable case or controversy to the court. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–72, 102 S.Ct. 752, 757–59, 70 L.Ed.2d 700 (1982).

To have standing, a plaintiff must have personally suffered some actual or threatened injury as a result of a defendant's allegedly unlawful conduct. *Id.* Furthermore, a plaintiff must be asserting his own legal rights in a case, not those of third parties. *Gladstone, Realtors v. Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979); *see also Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *New Jersey Speech–Language–Hearing Assn. v. Prudential Ins. Co.,* 724 F.2d 383, 385 (3d Cir.1983). Finally,

a plaintiff's own interest must be within the "zone of interests" protected by the law from which the claim arises. *Gladstone, Realtors,* 441 U.S. at 100 n. 6, 99 S.Ct. at 1608 n. 6.[5] These requirements

> tend[ ] to assure that the legal questions presented to the court will be resolved, not in the rarefied atmosphere of a debating society but in a concrete factual setting conducive to a realistic appreciation of the consequences of judicial action.

*Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758. If a plaintiff lacks standing, the court lacks judicial power to entertain the claim presented. Wright et al., Federal Practice & Procedure 2d § 3531 (1984).

The third-party complaint identifies the third-party plaintiff CSC as a private insurance company. It appears from that complaint that CSC issued a contract for auto insurance to Mr. Gariano, and that Mr. Gariano sued CSC under that contract for coverage of medical costs arising from his accident. As part of CSC's defense, it has brought a third-party action against PBS Medicare, alleging only that PBS Medicare—and not CSC—is liable to Mr. Gariano. CSC has not acted as a provider of the Medicare Part A services, nor as a provider or supplier of the Medicare Part B services, for which it alleges PBS Medicare owes Mr. Gariano reimbursement. Instead, the third-party complaint simply states: "At the time of the accident ... [Mr. Gariano] was insured by ... PENNSYLVANIA BLUE SHIELD and by PENNSYLVANIA BLUE SHIELD MEDICARE and [his] claim is covered under [that] insurance." It continues: "The insurance benefits claimed to be due to [Mr. Gariano] ... are not related to the motor vehicle accident ... and are not the responsibility of CSC ..., but are covered by ... PENNSYLVANIA BLUE SHIELD and by PENNSYLVANIA BLUE SHIELD MEDICARE...." CSC fails to allege any relationship to the PBS Medicare program, and also fails to allege any basis for PBS Medi-

---

**5.** The latter two requirements are not constitutionally mandated, but rather are derived from "prudential" principles established by the judi-

ciary "to limit access to the federal courts to those litigants best suited to assert a particular claim." *Id.,* 441 U.S. at 99, 99 S.Ct. at 1607.

care's indemnification or contribution[6] should CSC be found liable to Mr. Gariano.

Accordingly, CSC fails to establish the requirement under *Valley Forge* that CSC's asserted injury be the result of PBS Medicare's alleged illegal conduct. *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758; *see also Gladstone, Realtors,* 441 U.S. at 99, 99 S.Ct. at 1607. CSC has in fact alleged no illegal conduct by PBS Medicare. Further, the relief CSC seeks—PBS Medicare payments to Mr. Gariano—will not necessarily redress CSC's alleged injury in that, although Mr. Gariano may receive additional payments from PBS Medicare, they would not appear to affect his action against CSC based on CSC's failure to pay under CSC's own insurance contract with Mr. Gariano. Thus, CSC has failed to meet the additional standing requirements that the alleged injury be fairly traceable to the challenged action and that it will likely be redressed by a favorable decision. *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758; *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976).

In addition to the aforementioned constitutional deficiencies, the "prudential" principles underlying the standing doctrine also support denying CSC standing in this third-party action. The "prudential" component of the standing test serves to limit the role of the courts and asks whether constitutional or statutory provisions of the Medicare Act can be understood as granting persons and entities in CSC's position a right to judicial relief. *See Warth,* 422 U.S. at 500, 95 S.Ct. at 2206. As courts have previously observed, the Medicare program was expressly designed to benefit the elderly and disabled to whom health care is rendered and on whose behalf Medicare payments are made. *See* 42 U.S.C. § 1395c, 1395j; *Cervoni v. Secretary of HEW,* 581 F.2d 1010, 1018 (1st Cir.1978). CSC is neither a PBS Medicare beneficiary nor a provider or supplier of covered services to PBS Medicare beneficiaries. As such, CSC is not the intended beneficiary of the PBS Medicare program and has no direct relationship to the program; unlike provid-

ers, suppliers, or beneficiaries, CSC is thus not entitled to any PBS Medicare payments.

The propriety of this conclusion is evidenced by the intricate statutory schema governing Medicare payments. The Third Circuit has held that "Congress has expressly adopted a detailed scheme for administrative and judicial review of Medicare reimbursement decisions...." *New Jersey Speech,* 724 F.2d at 387. In so doing, Congress granted certain entities standing to appeal the PBS Medicare reimbursement decisions at issue here. *Id.* The Medicare Act provides that only the Medicare beneficiary, his assignee, or the supplier or provider of Medicare services is entitled to utilize the Medicare appeals process. 42 U.S.C. §§ 1395u, 1395ff; *see also* 42 U.S.C. § 405(b); 42 C.F.R. §§ 405.701–.730; 42 C.F.R. §§ 405.801–.874; 20 C.F.R. Part 404, Subpart J. There are no statutory or regulatory provisions for payments to third-party insurance companies which also happen to insure Medicare beneficiaries. Since an auto insurance company, such as CSC, is neither a provider of Medicare services, a supplier of Medicare services, a Medicare beneficiary nor an assignee of a Medicare beneficiary, it is evident that CSC has not been specified by Congress as a party entitled to appeal these Medicare determinations.

The court thus concludes that third-party plaintiff CSC should be denied standing. This holding extends to third-party defendant Blue Shield as well. The Blue Shield medical coverage plan in which Mr. Gariano is enrolled serves as a supplement to the PBS Medicare Part B subscription agreement. Pursuant to that agreement, Blue Shield is responsible for payment of 20% of the expense claims submitted to PBS Medicare that are deemed by PBS Medicare to be eligible for reimbursement. The Blue Shield policy expressly provides that "No payment is made ... for charges not allowed by Medicare." In the absence of PBS Medicare's approval for a claim, Blue Shield has no independent responsibility to process the claim or to make payments thereon. Thus any liability attaching to Blue Shield in this

---

**6.** Notwithstanding its failure to provide any analysis supporting the claim, CSC in fact seeks

indemnification and/or contribution from the third-party defendants.

case would be derivative to that attaching to PBS Medicare. Accordingly, the aforementioned reasons for denying CSC standing to maintain an action against PBS Medicare— namely, the lack of relationship between the asserted injury and the alleged misconduct, and the unlikelihood that the judicial relief sought would redress the asserted injury— also dictate that CSC lacks standing to maintain an action against Blue Shield.

### B. Remaining Issues

The court having concluded that CSC's lack of standing precludes CSC from maintaining an action against either PBS Medicare or Blue Shield, the questions of whether CSC has stated a claim or has satisfied all jurisdictional prerequisites need not be addressed.[7]

### IV. Conclusion

For the forgoing reasons, the court grants summary judgment in favor of PBS Medicare and Blue Shield.[8] An appropriate order will be entered.

---

7. The court notes that to rule on the subject matter jurisdiction argument—that is, the contention that this court may not entertain an action against Medicare and Blue Shield due to plaintiff's alleged failure to pursue all available administrative remedies—would in fact be inappropriate in the context of the motions before the court. The viability of CSC's third-party complaint against PBS Medicare and Blue Shield is a separate issue from the potential viability of a complaint against PBS Medicare and Blue Shield that may be brought by Gariano. The latter issue will be ripe for consideration only upon the re-filing of Gariano's motion to amend his complaint to add PBS Medicare and Blue Shield as defendants. That motion—filed by Gariano's counsel on April 16, 1993—was denied

without prejudice by Magistrate Judge Joel Rosen on July 2, 1993, pending resolution of the instant motions. This court will retain jurisdiction over the action so that Gariano may have the opportunity to re-file the motion to amend with Judge Rosen. Only at that time may the court *properly determine whether Gariano adequately exhausted administrative remedies and/or whether his case falls within an exception to the exhaustion requirement.*

8. Having relied on affidavits and exhibits submitted on behalf of the movants, the court grants summary judgment as opposed to dismissing the action under Rule 12. *See* Fed.R.Civ.P. 12(c).